UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| RICHARD W. KLATT, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:14CV1768-PPS |
|  | ) |  |
| CITY OF SOUTH BEND, | ) |  |
| KYLE DOMBROWSKI, | ) |  |
| ANTHONY ROSS, | ) |  |
| DEVON JOHNSON, and | ) |  |
| JONATHON GRAY, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

Richard Klatt, a *pro se* plaintiff, brings this civil rights action against the City of South Bend, Indiana, and four of its police officers. Klatt alleges that his constitutional rights were violated by the officers' conduct when, in the course of a burglary investigation, they removed Klatt from the van in which he was living and detained him. In particular, Klatt alleges that the Defendants violated his First Amendment rights by not allowing him to ask questions. He also brings two Fourth Amendment claims against the City and the individual Defendants. One claim alleges excessive force and the other alleges an unlawful search and seizure. [DE 20 at 3.] The discovery phase of the case has been completed, and the Defendants now seek summary judgment. Curiously, the Defendants have moved for summary judgment only on the excessive force claim and concerning municipal liability generally. Just as curiously,

despite being warned as to the perils of not responding to a summary judgment motion (*see* DE 77), Plaintiff Klatt has filed no response to the motion.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine dispute of material facts exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## **Undisputed Facts**

In support of their motion, the Defendants have offered a number of facts they say are not or cannot be genuinely disputed, supporting each by a citation to particular parts of the evidence of record, as required by Rule 56(c)(1)(A). Most of the evidence discussed below comes from either the police reports or from the deposition of Mr. Klatt. The Defendants have not bothered to submit affidavits from the officers. Because Klatt failed to file any opposition to the motion, and therefore has not raised any objections to my consideration of the police reports, I will consider them despite the fact that they are obviously hearsay.

On August 1, 2012, at approximately 2:52 am, South Bend Police Department received a 911 call that there had been a burglary at Mini Storage Depot. [DE 55 at 7.] Officer Kyle Dombrowski responded to the call. [DE 55 at 8.] Observing that several storage units had been forced open, Officer Dombrowski called for back-up. [*Id.*]

2

Officers Jonathon Gray and Devon Johnson, and Sergeant Anthony Ross arrived in response. [*Id*.] During a protective sweep of the property, the officers found three rifles and a large knife. [*Id*.] It is entirely unclear from the record where those weapons were found on the property. In any event, according to the police reports, the officers were worried that the perpetrator might still be on the property and could be armed with a weapon, so the officers cautiously continued to search the property. [*Id*. at 17.]

During this time, Klatt was asleep in the backseat of his van parked in front of his storage unit. [DE 76-1 at 4, 15, 30.] The rear windows of Klatt's van are tinted and had sunscreens on them with hanging clothes obstructing the view of the van's interior. [*Id*. at 4, 9.] The incident reports of Officers Dombrowski, Johnson and Gray indicate that as they approached the van and used flashlights to examine the interior, they found it to be jam-packed with objects, and they heard an occupant inside yelling. [DE 55 at 9, 15, 17.] Klatt disputes this; he says he was as quiet as a church mouse. [DE 76-1 at 5.] Klatt testified that the officers banged on the back window and asked, "Is anybody in there?" [*Id*. at 4-5, 12.] Not knowing what was going on or that they were police officers, Klatt did not respond to the officers. [*Id*. at 5, 10, 12.] The officers asked again if anyone was in the van, and again Klatt did not respond. [*Id*. at 5, 12.] An officer, whom Klatt identifies as the African American officer, then used a window punch to break out a back window of Klatt's van. [*Id*. at 5, 18; DE 4 at 2.]

Klatt is only able to identify the officers by their characteristics, such as the "big and tall guy," the "black guy," and the "assault rifle guy." [DE 76-1 at 13.] The "big

guy" pulled Klatt by his shoulder out of the car, pushed Klatt by the top of his head to a seated position on the ground and handcuffed him behind his back. [DE 20 at 2; DE 76-1 at 18, 26-27.] The African American officer and the "big and tall officer" both had handguns pointed at Klatt, and another officer had an assault rifle pointing at him. [DE 76-1 at 27.] They told Klatt to sit on the ground and not to say anything. [*Id*. at 15.] None of the officers made physical contact with Klatt after this. [*Id*. at 26, 27-28.] Klatt claims that officers talked tough, making remarks about using a taser him, putting the "K9" on him, and saying "give him a reason" while pointing an assault rifle at Klatt. [*Id*. at 28.]

The officers pulled a few items out of his van (the sunscreens and a coat that had been hanging in front of a window), but Klatt admits that they did not take anything. [*Id*. at 14-15, 31.] A K9 officer arrived and started moving towards Klatt but the dog led the officer in a different direction. [*Id*. at 16.] Neither the K9 officer nor the dog approached Klatt. [*Id*.] Klatt's only complaint about the K9 officer is his "failure to intervene." [*Id*. at 32-33.] The officers covering Klatt began to walk away, and Klatt told them he had to go to the bathroom but was refused. [*Id*. at 22-23.] The "big guy" came back once to ask Klatt for his Social Security number. [*Id.* at 23-24.]

About 20 minutes later, two of the officers returned, removed Klatt's handcuffs, and told him he was free to go. [*Id*. at 17, 25.] Klatt walked toward the storage facility's office, noticing the units that appeared to have been broken into. [*Id*. at 32.] Given that the 911 call was received at 2:52 a.m., Officer Gray arrived as backup at about 3:13 am,

4

and the first incident report was entered into the police department's system by Officer Dombrowski at 4:04 a.m., the entirety of the Defendants' on-scene investigation lasted approximately 45 minutes at most, and Klatt's involvement even less. [DE 55 at 7-8, 16.] Klatt admitted that it was reasonable for an officer to want to investigate a car parked at the site of the burglary, to think a suspect might be hiding somewhere in the facility, and to think that a burglary suspect might be armed. [DE 76-1 at 34-35.]

## Discussion

Giving a liberal construction to the *pro se* Plaintiff's second amended complaint, Klatt alleges that his First Amendment rights were violated when he was told not to speak, and that his Fourth Amendment rights were violated because he was unlawfully detained. He also claims that the officers subjected him to excessive force. [DE 20 at 2-3.] As noted at the outset, the motion for summary judgment addresses only the excessive force claim and the larger issue of municipal liability.

I'll start with the First Amendment claim. Klatt invokes the First Amendment in conjunction with his allegation that he was told by the police "not to say a word" and "told [he] could not talk or ask questions." [DE 20 at 2, 3.] A police officer threatening an arrest if a subject doesn't "shut up" does not state a First Amendment claim if the plaintiff "fail[s] to allege that his speech was altered or deterred by the officer's threat." *Marner v. City of Aurora*, 624 Fed.Appx. 665, 666 (10th Cir. 2015) Here Klatt's pleading expressly acknowledges that his speech was not in fact restrained by the officer's directive: "I could not help it, I asked 'please' tell me what is happening." [DE 20 at 2.]

5

The officers temporarily detained Klatt in the course of their protective sweep and search of the Mini Storage Depot premises. "It is reasonable to conclude that directing an individual to be quiet during a search, or declining to answer the individual's questions, is reasonably related to the officer's need to concentrate and act quickly, and cannot therefore be said to impermissibly impinge upon the individual's exercise of free speech." *Ingram v. Sacramento Police Dep't*, No. CIV S-08-2547 LKK EFB PS, 2009 WL 2905774, at *6 (E.D.Cal. Sept. 4, 2009). Courts have held that "'[a]rresting officers simply do not violate their arrestee's First Amendment rights by telling him or her to shut up.'" *Bradley v. Stupar*, No. 4:15cv17, 2015 WL 9302388, at *4 (E.D.Va. Dec. 21, 2015), quoting *Minyard v. Walsh*, No. CV 13-00110, 2014 WL 1029835, at *4 (C.D.Cal. Mar. 17, 2014). As in *Ingram*, the "gravamen of [Klatt's] complaint is an alleged unreasonable detention, search and use of force, not denial of his right of expression." *Id*. at *6. No viable First Amendment claim is stated by Klatt's allegations, and the claim will be dismissed.

I'll move now to the claims brought against the City of South Bend. South Bend argues that it is entitled to summary judgment because Klatt lacks the argument and evidence necessary to establish municipal liability for the conduct of the four police officer Defendants. [DE 76 at 5.] Such claims are governed by principles the Supreme Court laid out in *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). To support a claim against South Bend for the allegedly unconstitutional actions of its officers, Klatt "needed to present evidence that a [city] policy, practice or custom caused a

6

constitutional violation." *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016). This requires proof of "(1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009), quoting *Simmons vs. Chi. Bd. of Educ.*, 289 F.3d 488, 494 (7th Cir. 2002). By failing to respond to the summary judgment motion, Klatt has failed to meet this burden in order to keep his claims against South Bend alive, and the City will be granted summary judgment.

Klatt's next claim is for excessive force. Such claims are analyzed under an "objective reasonableness" standard. *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016). In other words, "[a] police officer's use of force is unconstitutional if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003), quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987). "The inquiry is fact specific and balances the intrusion on the individual against the governmental interests at stake." *Payne*, 337 F.3d at 778. The test is not "capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The applicable constitutional standard is rooted in the Fourth Amendment's requirement that seizures of persons be reasonable, and depends on an objective assessment of the officers' conduct. As the Supreme Court noted in *Graham v. Connor*, 490 U.S. 386, 396-97 (1989), "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense,

7

uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."

Only a minimal level of force was employed against Klatt. Klatt wasn't struck, punched, tased or anything of the sort. He was simply removed from his van and put on the ground and handcuffed. It was reasonable to handcuff him to insure the officers' safety while they continued their investigation until they deemed him no risk, all of which took less than 30 minutes. Although having firearms pointed at him was certainly unwelcome or even disturbing for Klatt, it was not unreasonable in the circumstances, given that potential suspects might be armed and Klatt had previously been uncooperative by failing to respond to the officers' inquiries. The facts here are distinguishable from cases in which police unreasonably continued to point a gun at an individual when he clearly presented no danger. *See, e.g., Jacobs v. City of Chicago*, 215 F.3d 758, 773-74 (7th Cir. 2000).

In sum, the officers' actual *use* of force was minimal – pulling Klatt from the van and pushing him to a seated position on the ground – and their *show* of force – drawn weapons and tough talk – was brief. Both were reasonable in the circumstances as the officers then understood them. Therefore, Defendants Dombrowski, Johnson, Gray and Ross are entitled to summary judgment on Plaintiff Klatt's excessive force claims, and those claims are now dismissed.

Klatt has also pled a claim of wrongful detention under the Fourth Amendment. The sum and substance of his claim is that the police had no right to seize his van by

punching out the window and no right to detain him.  The analysis of this claim will be based on how the encounter between Klatt and the police is characterized.  If the encounter is deemed an arrest, then the police will have to show that they had probable cause to detain him and seize his property through the breaking of the van's window.  *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016).  If, on the other hand, the encounter is more akin to a stop and frisk then the police will have to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

As I noted at the outset, the Defendants' motion for summary judgment was a narrow one.  It was limited to the excessive force and municipal liability claims.   This means that Klatt's Fourth Amendment claim of unlawful detention remains pending.

**ACCORDINGLY:**

Defendants' motion for summary judgment [DE 75] is GRANTED as follows.

Defendant City of South Bend is granted summary judgment on all claims asserted in Plaintiff's second amended complaint.

Defendants Dombrowski, Ross, Johnson and Gray are granted summary judgment on Plaintiff's excessive force claims.

Plaintiff's First Amendment claim is dismissed for failure to state a claim upon which relief can be granted.

The Fourth Amendment claim of unlawful detention remains pending as against Defendants Dombrowski, Ross, Johnson and Gray.

An in-person status conference is set for **Thursday, March 9, 2017 at 10:00 Eastern (South Bend) Time** in the 3rd Floor Courtroom of the Robert A. Grant Courthouse in South Bend, Indiana. Plaintiff Klatt and counsel for Defendants Dombrowski, Ross, Johnson and Gray are required to attend.

**SO ORDERED**.

ENTERED: February 13, 2017.

                                                 /s/ Philip P. Simon
                                                PHILIP P. SIMON, JUDGE
                                                UNITED STATES DISTRICT COURT